UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY ANN RACZKA and DANIEL E. RACZKA,

          Plaintiffs,

    v.                                    **DECISION & ORDER**
                                               04-CV-737S

JOHN E. POTTER, Postmaster General,

          Defendant.

# I. INTRODUCTION

In this action, Plaintiffs bring a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and the Age Discrimination Employment Act of 1967, 29 U.S.C. § 621. Plaintiff Mary Ann Raczka ("Mary Ann") alleges that Defendant discriminated against her because of her age (46), gender (female), and national origin (Polish); that she was subjected to a hostile work environment; and that Defendant retaliated against her for complaining about discriminatory conduct. Plaintiff Daniel Raczka ("Daniel") alleges that Defendant discriminated against him because of his gender (male), and in retaliation for prior discrimination complaints. Presently before this Court is Defendant's Motion for Summary Judgment.[1] Plaintiffs oppose the motion.[2] For the following reasons, Defendant's motion is granted.

---

[1] In support of its motion, Defendant submitted a memorandum of law, a statement of facts pursuant to Local Rule 56.1, an appendix to the statement of material facts, and a supplemental appendix.

[2] In opposition to Defendant's motion, Plaintiffs submitted a memorandum of law, a statement of facts pursuant to Local Rule 56.1, and an appendix to the statement of facts.

## II. BACKGROUND

### A.      Facts

Plaintiffs, Mary Ann and Daniel Raczka, were married in 1993.   (Defendant's Statement pursuant to Local Rule 56.1 ("Defendant's Statement"), ¶ 1).   Mary Ann has been employed by the United States Postal Service ("USPS") since 1984.   (Defendant's Statement, ¶ 2).   Daniel was employed by USPS from 1970 until his retirement in 2006. (Defendant's Statement, ¶ 4).   Since 1988, Mary Ann has been employed as a clerk at the Vehicle Maintenance Facility ("VMF") in Buffalo, NY.   (Defendant's Statement, ¶ 3).   From 1984 until approximately December of 2002, Daniel served as manager of the VMF, and was responsible for the supervision of all VMF employees, including Mary Ann. (Defendant's Statement, ¶¶ 5-6).   Mary Ann's immediate supervisor was Peter Grodem, who reported directly to Daniel.   (Defendant's Statement, ¶ 7; Plaintiffs' Statement pursuant to Local Rule 56.1 ("Plaintiffs' Statement"), ¶¶ 6-7).[3]

### 1.      The Donahue Memorandum

On May 22, 2002, Patrick Donahue, Chief Operating Officer of USPS, issued a memorandum (the "Donahue memorandum") requiring a case-by-case review of all situations where reporting relationships existed between USPS employees that were married, or unmarried and sharing a household.   (Defendant's Statement, ¶¶ 8, 20).   The Donahue memorandum stated that there was a concern about the appearance of

---

[3]       Plaintiffs have listed objections to specific paragraphs in Defendant's Statement of Material Facts.  All factual allegations not objected to are deemed true for the purposes of summary judgment analysis pursuant to Local Rule 56.1(c).

impropriety, even where layers of supervision existed between spouses in a reporting relationship. (Defendant's Statement, ¶ 16).

In April of 2003, USPS Northeast Area Vice President John Steele directed that all reporting relationships involving spouses, unmarried persons sharing a household, or close relatives, be eliminated by voluntary transfer or involuntary reassignment. (Defendant's Statement, ¶ 25).

### 2.    Daniel's Reassignment

Around July of 2002, Nicholas Fabozzi, Daniel's supervisor, requested that Daniel accept reassignment to a position in Jamestown, NY, which Daniel refused. (Defendant's Statement, ¶ 29). In July or August of 2002, Daniel was advised that either he or Mary Ann would have to relocate to a different work site. (Defendant's Statement, ¶ 30).

Plaintiffs obtained a divorce on October 4, 2002, allegedly to avoid Daniel's reassignment, but otherwise continued their relationship and resided in the same residence. (Defendant's Statement, ¶ 10).

Around October of 2002, Anne Vogtli, USPS Manager of Operations Support, offered Daniel the choice of reassignment to one of two positions; Station Manager of the Northside Station in Buffalo, or Postmaster of the Tonawanda Post Office. (Defendant's Statement, ¶ 33). Daniel chose the Tonawanda Postmaster position, and was reassigned effective December 14, 2002. (Defendant's Statement, ¶¶ 33-36). As a result of the reassignment, Daniel did not suffer any diminution in pay, grade, or benefits. (Defendant's Statement, ¶ 37). Defendant contends that all reporting relationships between spouses or unmarried employees sharing a household in the Western New York USPS District were resolved by transfer or reassignment. (Defendant's Statement, ¶¶ 39-40).

3

### 3.      Daniel's EEO Complaint

In January of 2003, Daniel filed an Equal Employment Opportunity ("EEO") Complaint of Discrimination, alleging that his reassignment to the Tonawanda Postmaster position constituted discrimination on the basis of sex, and retaliation for prior EEO activity. (Defendant's Statement, ¶¶  42-43).

### 4.      Mary Ann's Employment

Mary Ann claims that problems arose between her and her co-workers shortly after she began working at the VMF in 1988.  (Defendant's Statement, ¶¶ 47-48).  Mary Ann claims that she was subjected to harassment by co-workers because of her relationship with Daniel.  (Defendant's Statement, ¶ 49).  Following an altercation in 1995 with the union director, George Housch, Mary Ann ceased paying union dues and assumed the status of a non-dues paying member of the union.  (Defendant's Statement, ¶ 50).

### 5.      Mary Ann's 2000 EEO Complaint

Mary Ann alleges that she was subjected to continual harassment by the union and its president.  (Defendant's Statement, ¶¶ 42-51).  In February of 2000, Mary Ann filed an EEO pre-complaint alleging discrimination based on sex and marital status.  (Defendant's Statement, ¶ 53).  Mary Ann later withdrew her pre-complaint and the matter was resolved through mediation.  (Defendant's Statement, ¶¶ 54).

### 6.      The "Climate Survey"

In December of 2001 and January of 2002, a USPS customer service manager conducted a "climate survey" in response to complaints that Mary Ann received preferential treatment from Daniel and exercised too much influence over him.  (Defendant's

Statement, ¶¶ 56-57).  The "climate survey" report concluded that there were instances of problems stemming from the interpersonal relationships of several employees, but indicated that interviews with employees failed to identify any significant new issues or incidents.  (Defendant's Statement, ¶¶ 58).  No changes were made to either Daniel's or Mary Ann's employment status as a result of the survey.  (Defendant's Statement, ¶¶ 60).

### 7.     Mary Ann's 2002 EEO Complaint

On February 4, 2002, Mary Ann filed a formal EEO complaint alleging discrimination and a hostile work environment based on her national origin, sex, and age, and in retaliation for prior EEO activity.  (Defendant's Statement, ¶ 65).

On February 24, 2004, EEOC Administrative Judge, Kevin J. Berry, issued a decision in favor of USPS and dismissed Mary Ann's complaint.  (Defendant's Statement, ¶ 106).  On August 9, 2004, the EEOC Office of Federal Operations affirmed the Final Agency Order.  (Defendant's Statement, ¶ 108).

### 8.     The Letter of Warning

On February 19, 2002, Diane Coniglio, a co-worker of Mary Ann, complained to Peter Grodem, Mary Ann's direct supervisor, that Mary Ann was changing work assignments. (Defendant's Statement, ¶ 73).  When Grodem attempted to discuss the matter with Mary Ann, she raised her voice.  (Defendant's Statement, ¶ 76).  Grodem, who had spoken with Mary Ann about inappropriate conduct on a prior occasion, issued a letter of warning charging her with conduct in violation of the employee manual.  (Defendant's Statement, ¶¶ 77, 84).  In response to the letter of warning, Mary Ann filed a grievance which was later denied.  (Defendant's Statement, ¶¶ 85-87).

**9.     Daniel's Allegations**

Daniel alleges that Defendant discriminated against him on the basis of his gender by reassigning him to the Tonawanda Postmaster position.  (Plaintiff's Memorandum of Law, pp. 8-11).  Daniel further alleges that the reassignment was in retaliation for EEO activity commenced by Mary Ann.  (Plaintiff's Memorandum of Law, pp. 15-16).

**10.     Mary Ann's Allegations**

Mary Ann alleges that she was subjected to a hostile work environment based on her gender and nationality as evidenced by the climate survey; the union's failure to invite her to meetings; and general animosity from union officials.  (Plaintiff's Memorandum of Law, pp. 11-13).

Mary Ann further alleges that she was subjected to disparate treatment based on her age, gender, and nationality, as evidenced by the letter of warning; instances where a male coworker received preferential work assignments; a request that she do certain work because she was younger than her coworkers; and an instance when she was reprimanded for being loud while a non-Polish employee was permitted to speak loudly. (Plaintiff's Memorandum of Law, pp. 14-15).

Finally, Mary Ann alleges that she was subjected to retaliation for EEO activity as evidenced by the climate survey, general animosity from union officials, and the letter of warning.  (Plaintiff's Memorandum of Law, p. 16).

6

## III. DISCUSSION AND ANALYSIS

**A.    Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary

adjudication." <u>Eastmer v. Williamsville Cent. Sch. Dist.</u>, 977 F.Supp. 207, 212 (W.D.N.Y. 1997) (quoting <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." <u>Id.</u>

## B.    Discrimination Claims

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003). It is now well settled that discrimination claims brought under Title VII are analyzed under the burden-shifting analysis first set forth by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142-43, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

The burden-shifting test first requires that the plaintiff establish a *prima facie* case of discrimination. If the plaintiff meets this initial burden and establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.

Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Assuming that the defendant meets its burden at the second stage, the burden returns to the plaintiff to prove that the defendant's discrimination was intentional. In this regard, the plaintiff must produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock, 224 F.3d at 42. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id. However, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." Id. (quoting St. Mary's, 509 U.S. at 519).

### 1.    Plaintiff Daniel Raczka's Discrimination Claim

#### a.    Daniel's *Prima Facie* Case

To state a *prima facie* case, a plaintiff must show that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination. Weinstock, 224 F.3d at 42 (citing McDonnell Douglas, 411 U.S. at 802).

Daniel has not established a *prima facie* case of discrimination. His involuntary reassignment to the Tonawanda Postmaster position does not alone "give rise to an inference of discrimination." Weinstock, 224 F.3d at 42. Daniel has failed to produce

9

sufficient evidence that could lead a reasonable juror to infer that his reassignment was a form of gender discrimination.  However, given the minimal burden at this stage and Defendant's proffer of a legitimate non-discriminatory reason for reassigning Daniel, this Court finds it expeditious to assume the existence of a *prima facie* case and move to the next stage of the analysis.  See Besht v. Gen. Motors, 327 F.Supp.2d 208, 212-13 (W.D.N.Y. 2004) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant.")).

### b.     Defendant's Legitimate, Non-Discriminatory Reason

The burden is now on Defendant to produce a legitimate, non-discriminatory reason for terminating Daniel's employment.  See Reeves, 530 U.S. at 142 (noting that the defendant's burden at the second stage is not one of proof or persuasion, but is more appropriately considered a burden of production.)  "This explanation must be 'clear and specific.'"  Gallo, 22 F.3d at 1226 (quoting Meiri, 759 F.2d at 997).

Defendant contends that Daniel's involuntary transfer was the result of a policy decision to eliminate all reporting relationships between spouses, and unmarried employees residing in the same household, by transfer or involuntary reassignment.  The policy was in response to concerns about the appearance of impropriety that could arise where spouses, or unmarried employees living together, were in a reporting relationship, even where the couple was separated by multiple layers of supervision.  Following the Donahue Memorandum, which outlined the policy, Daniel was advised that either he or

10

Mary Ann would have to relocate to a different work site.  (Defendant's Statement, ¶ 30).

Based on the above, this Court finds that Defendant has articulated a legitimate, non-discriminatory reason for Daniel's reassignment.  Consequently, the presumption of discrimination created by Plaintiffs' demonstration of a *prima facie* case "drops out of the picture."  St. Mary's, 509 U.S. at 11.

### c.    Pretext for Intentional Discrimination

The burden now returns to Daniel to demonstrate that Defendant's non-discriminatory reason is a mere pretext for actual unlawful discrimination.  "Where a plaintiff has alleged that an employer's reasons for an adverse employment action are pretextual, all reasonable inferences must be drawn in favor of the plaintiff's showing of pretext."  Joseph v. Manhattan & Bronx Surface Transit Operating Auth., No. 96 Civ. 9015, 2004 WL 1907750, at *14 (S.D.N.Y. Aug. 25, 2004).    At this stage, the court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (quoting Reeves, 530 U.S. at 143.)

A defendant's proffered non-discriminatory reason, however, "cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  Olle v. Columbia Univ., 332 F.Supp.2d 599, 617 (S.D.N.Y. 2004) (quoting St Mary's, 509 U.S. at 502); see also AB v. Rhinebeck Cent. Sch. Dist., 224 F.R.D. 144, 153 n.9 (S.D.N.Y. 2004).  Therefore, to avoid summary judgment, Daniel must establish the existence of a genuine issue of fact as to whether Defendant's

proffered explanations are false and a mere pretext for unlawful discrimination.  Weinstock,

224 F.3d at 42.  Unless Daniel can point to evidence that reasonably supports a finding of

prohibited discrimination based on gender, Defendant is entitled to summary judgment.

See James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

Daniel alleges that two female USPS managers in other districts were not required

to relocate, even though they were in reporting relationships with their respective spouses.

(Plaintiffs' Memorandum, p. 9).  Defendant responds that although a "Chinese wall" was

temporarily put in place for one of the female managers, that was only a temporary

solution, and the manager was ultimately transferred to another facility.  (Defendant's

Memorandum, p. 11).  Defendant further responds that the second female manager was

detailed to another facility, and was permitted to return to her original facility when her

spouse left his job there.  (Defendant's Memorandum, p. 12).  Although USPS attempted

to resolve problematic reporting relationships in other districts via alternative means, these

were only temporary solutions.  Ultimately the two female managers were subject to the

same requirements as Daniel.

Furthermore, as Defendant points out, the reporting relationship between Daniel and

Mary Ann was the source of much controversy at the VMF, as evidenced by animosity

between Mary Ann and her coworkers due to the perception that she received preferential

treatment from Daniel.  Daniel does not allege that the two female USPS managers'

reporting relationships were the source of controversy or complaints.  (Plaintiffs'

Memorandum, p. 10).  Accordingly, Daniel has failed to demonstrate that he was "similarly

situated in all material respects" to the two female USPS managers for the purposes of

disparate treatment analysis.  See e.g. Graham v. Long Island R.R., 230 F.3d 34, 39-40

(2d Cir. 2000).

Based on the above, this Court finds that Daniel has failed to produce sufficient

evidence from which a jury could find that Defendant's legitimate, non-discriminatory

reason is false, and that Defendant reassigned Daniel because of his gender.  Accordingly,

Defendant is entitled to summary judgment on Daniel's discrimination claim.

### 2.    Plaintiff Mary Ann Raczka's Disparate Treatment Claims

A disparate treatment claim arises when a member of a protected class is treated

less favorably than others under circumstances from which an unlawful motive could be

inferred.  See Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d

305, 309 (2d Cir. 1981); see also Ott v. Perk Dev. Corp., 846 F.Supp. 266, 275 (W.D.N.Y.

1994).  Plaintiff's disparate treatment claims based on gender and national origin are

subject to the Title VII burden-shifting analysis discussed above.

### a.    Mary Ann's *Prima Facie* Case

As explained above, to state a *prima facie* case, a plaintiff must show that (1) she

is a member of a protected class, (2) she is qualified for his position, (3) she suffered an

adverse employment action, and (4) the circumstances of the adverse action give rise to

an inference of discrimination.  Weinstock, 224 F.3d at 42.  The Second Circuit has

explained that:

> An "adverse employment action" is one which is "more
> disruptive than a mere inconvenience or an alteration of job
> responsibilities."  Examples of materially adverse changes
> include "termination of employment, a demotion evidenced by
> a decrease in wage or salary, a less distinguished title, a

> material loss of benefits, significantly diminished material
> responsibilities, or other indices . . . unique to a particular
> situation.

Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).

Mary Ann alleges instances where a male coworker received preferential work assignments; where she was asked to do certain work because she was younger than her coworkers; and where she was reprimanded for being loud while a non-Polish employee was permitted to speak loudly.  (Mary Ann Aff. ¶ 59.b-c).

This Court finds that based on the above allegations, Plaintiff Mary Ann Racza has failed to allege conduct that would rise to the level of an adverse employment action.  Mary Ann's claim that she was occasionally given different work assignments than her male coworkers is not evidence of a material change in her duties.  Rather, Mary Ann's allegations are best categorized as "mere inconvenience[s] [and] alteration[s] of job responsibilities."  Terry, 336 F.3d at 138.  Accordingly, this Court finds that Mary Ann has failed to state a *prima facie* case of discrimination.

Mary Ann further alleges that the letter of warning constituted actionable discrimination because other employees did not receive letters of warning for similar misconduct.  While the letter of warning did not result in a suspension, loss of pay, or any other consequences for Mary Ann, a jury could find that the letter constituted an adverse employment action.  See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (reasoning that an official reprimand may constitute an adverse employment action).  As such, Mary Ann has presented sufficient evidence to meet the adverse action prong.

Turning to the final prong, while it does not appear that the circumstances surrounding the letter give rise to an inference of discrimination, this Court finds it

14

expeditious to assume the existence of a *prima facie* case and move to the next stage of the analysis.  See Besht, 327 F.Supp.2d ay 212-13. (W.D.N.Y. 2004).

### b.      Defendant's Legitimate, Non-Discriminatory Reason

Defendant has presented the valid non-discriminatory reason that the letter of warning was issued to reprimand Mary Ann for inappropriate conduct, and that it was a disciplinary device regularly used by Mary Ann's supervisor.  Mary Ann conceded in her deposition that the letter of warning followed an incident where she became agitated with her supervisor and spoke to him in a "very loud voice."  (Defendant's Appendix to Statement of Material Facts, Exhibit C, p. 53).  Accordingly, this Court finds that Defendant has presented a valid, non-discriminatory reason for the letter of warning.

### c.      Pretext for Intentional Discrimination

The court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  Schnabel, 232 F.3d at 90.  Based on the statements of Mary Ann and her supervisor, Defendant maintains that the letter of warning was intended to reprimand Mary Ann for inappropriate conduct.  (Defendant's Memorandum, p. 27; Defendant's Appendix to Statement of Material Facts, Exhibit N, p. 68 (Grodem's Affidavit); Exhibit C, p. 53 (Mary Ann's Deposition)).  Mary Ann admits that the letter of warning followed an incident with her supervisor where she became agitated and spoke to him in a "very loud voice."  (Defendant's Appendix to Statement of Material Facts, Exhibit C, p. 53).  Mary Ann has failed to rebut Defendant's proffered reason with evidence that would lead a reasonable juror to conclude that the reason is false, and that the letter of

warning was a form of discrimination.   Accordingly, Defendant is entitled to summary judgment on Mary Ann's claims of disparate treatment.

## C.   Hostile Work Environment Claims

The Supreme Court has held that Title VII's protection extends beyond "economic" or "tangible" discrimination.  Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citing Meritor Savings Bank, FSV v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).  Rather, Congress enacted Title VII to "strike at the entire spectrum of disparate treatment of men and women in employment," including the requirement that employees work in a hostile or abusive environment.  Harris, 510 U.S. at 21.

To survive a motion for summary judgment, a plaintiff claiming that she was the victim of a hostile work environment must produce evidence from which a reasonable trier of fact could conclude "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson, 180 F.3d at 436).  "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility."  Leibovitz v. New York City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).

Plaintiff Mary Ann Raczka alleges that she was subjected to a hostile work

16

environment due to harassment from union officials.  Defendant responds that plaintiff has failed to show any harassment on account of her gender, age, or nationality.

### 1.    Conduct Prompted by Plaintiff's Protected Status

Only conduct prompted by a plaintiff's protected status or directed at a plaintiff because of his protected status contributes to a hostile work environment claim.  <u>See Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002);  <u>Bush v. Fordham University</u>, 452 F.Supp.2d 394 (S.D.N.Y. 2006).

Plaintiff Mary Ann Raczka alleges that she was subjected to a hostile work environment as evidenced by the following harassing conduct:

- the "climate survey" investigation into whether she received preferential treatment from her husband in his capacity as supervisor

- the union's failure to invite her to meetings that occurred during work hours

- general animosity from union officials

The record supports Mary Ann's contention that she had a poor relationship with union officials and that there was animosity between her and several of her coworkers. (Defendant's Appendix to Statement of Material Facts, Exhibit C (Mary Ann's Deposition), pp. 35-39, 44-46).  Mary Ann has failed to show, however, sufficient evidence indicating that  these alleged hostilities were due to her gender or nationality.  On the contrary, there is compelling evidence that Mary Ann was at odds with the union due to her status as a "non-dues paying member," and had a strained relationship with coworkers because of her marriage to VMF supervisor Daniel Raczka and the perception that she received preferential treatment.  (Defendant's Appendix to Statement of Material Facts, Exhibit C (Mary Ann's Deposition), pp. 35-39, 44-46; Exhibit N (Grodem's Affidavit), p. 66; Exhibit T

17

(Letter on "Climate Survey")).

Mary Ann has failed to produce evidence that would lead a reasonable juror to conclude that she was subjected to a hostile work environment due to her gender or nationality.  Accordingly, in the absence of any material issues of fact, this Court finds that Defendant is entitled to summary judgment on Mary Ann's hostile work environment claims.

**D.      Retaliation Claims**

Title VII makes it unlawful for employers to retaliate against employees who participate in protected activities, such as challenging discriminatory practices or actions. 42 U.S.C. § 2000e-3(a); Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004).  When evaluating a Title VII retaliation claim, courts employ the McDonnell-Douglas burden-shifting analysis.

Under that framework, the plaintiff must first establish a *prima facie* case of retaliation.  If the plaintiff makes such a showing, the burden shifts to the defendant, who must point to evidence that there was a legitimate, non-retaliatory reason for the employment decision at issue.  If the defendant meets that burden, the plaintiff must demonstrate that "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." Richardson, 180 F.3d at 443.

**1.      Plaintiff Daniel Raczka's Retaliation Claims**

Daniel contends that he was involuntarily reassigned to the Tonawanda Postmaster

18

position in retaliation for EEO complaints filed by Mary Ann.

        a.      **Daniel's *Prima Facie* Case**

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) he participated in a protected activity, (2) his participation was known to the defendant, (3) he suffered an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action. Richardson, 180 F.3d at 443; Jones v. Smithkline Beecham Corp., 309 F.Supp.2d 343, 356 (N.D.N.Y. 2004).

Daniel contends that he was involuntarily reassigned to the Tonawanda Postmaster position because of his wife's EEO complaints. Defendant responds that Daniel cannot assert a "third-party retaliation claim," and further, that there is no causal relationship between the EEO complaints and Daniel's reassignment.

The Second Circuit Court of Appeals has not yet decided whether a party may proceed on a third-party retaliation claim under Title VII. See Gonzalez v. New York State Department of Correctional Services, 122 F.Supp.2d 335, 347 (N.D.N.Y. 2000); Sacay v. Research Foundation of City University of New York, 193 F.Supp.2d 611, 633 (E.D.N.Y. 2002). However, for the purposes of analyzing Daniel's claim, it is not necessary to determine whether he can proceed on a third-party retaliation claim. Even assuming that Daniel could proceed on such a claim, he has failed to produce evidence of a causal relationship between Mary Ann's EEO activity and his reassignment that would lead a reasonable juror to conclude the reassignment was an act of retaliation.

Considering the merits of Daniel's claim, it is undisputed that Mary Ann filed EEO complaints and that Defendant was aware of these complaints. Although Daniel did not

suffer any diminution in pay or benefits as a result of his reassignment, a reasonable jury could conclude that it was an adverse employment action.  See e.g. Czekalski v. Peters, 475 F.3d 360, 364 (D.C.Cir. 2007) (holding that a lateral transfer could be an adverse employment action, particularly where the new position entails different responsibilities).

Daniel's claim fails, however, on the final prong of the analysis, the requirement of a causal connection.  Mary Ann filed EEO complaints in February of 2000, and January of 2002.  In July or August of 2002, Daniel was told that either he or Mary Ann would need to transfer to a different location.  Daniel was reassigned to the Tonawanda Postmaster position in October of 2002.  While "temporal proximity between protected activity and an adverse action may in some circumstances be evidence of retaliatory motive . . . post hoc, ergo propter hoc (literally, 'after this, therefore because of this') reasoning is not enough to give rise to a genuine issue of material fact."  Crenshaw v. Herbert, 445 F.Supp.2d 301 (W.D.N.Y. 2006).  Daniel has failed to provide sufficient evidence that would lead a reasonable juror to conclude that his reassignment was in retaliation for Mary Ann's EEO activity.  Thus, Daniel has failed to state a *prima facie* case of retaliation.

### b.    Defendant's Legitimate, Non-Discriminatory Reason

As discussed in the context of Daniel's discrimination claim, this Court finds that Defendant has proffered a legitimate, non-discriminatory reason for Daniel's reassignment, specifically, the policy decision to eliminate reporting relationships between spouses and unmarried persons sharing a household.

### c.    Pretext for Retaliation

To defeat Defendant's motion, Daniel must now produce "sufficient evidence to

support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation] was the real reason for the discharge." Stephens v. SUNY at Buffalo, 11 F.Supp.2d 242, 250 (W.D.N.Y. 1998) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)).

Plaintiff Daniel Raczka fails to produce sufficient evidence that his reassignment was in retaliation for EEO activity, and was not the result of the policy decision to eliminate reporting relationships between spouses. The record is clear that by April of 2003, the USPS Northeast Area Vice President directed the elimination of all reporting relationships involving spouses, and unmarried persons sharing a household, either by transfer or involuntary reassignment. (Defendant's Statement, ¶ 25). No evidence supports any other conclusion, but that Daniel was relocated pursuant to USPS policy. For that reason, no reasonable juror could find in Daniel's favor. Accordingly, Defendant is entitled to summary judgment on Daniel's claim of retaliation.

### 2.	Plaintiff Mary Ann Raczka's Retaliation Claim

Mary Ann contends that she was subjected to harassment at work in retaliation for EEO activity. Specifically, Mary Ann points to the "climate survey," animosity from union officials, and the letter of warning as evidence of retaliation.

### a.	Mary Ann's *Prima Facie* Case

Like Daniel's claim, Mary Ann's retaliation claim fails because there is insufficient evidence of a causal relationship between the protected EEO activity and the climate survey, the animosity from union officials, or the letter of warning from which a jury could reasonably conclude that Mary Ann was subject to retaliation. Because no reasonable

juror could find a causal relationship, this Court must find that Mary Ann has failed to state a *prima facie* case of retaliation.

### b.    Defendant's Legitimate, Non-Discriminatory Reason

As discussed in the context of Mary Ann's disparate treatment claims, Defendant submits that the letter of warning was in response to Mary Ann's inappropriate conduct toward a supervisor, and was a regularly used disciplinary tool.  As discussed in the context of Mary Ann's hostile work environment claim, Defendant submits that the union's animosity toward Mary Ann was prompted by her status as a non-dues paying member, and her relationship with the VMF supervisor.  Accordingly, this Court finds that Defendant has offered legitimate, non-discriminatory reasons for the allegedly retaliatory conduct.

### c.    Pretext for Retaliation

Mary Ann has failed to offer sufficient evidence that could lead a reasonable juror to conclude that Defendant's proffered reasons are pretextual.  Defendant has produced compelling evidence that the union's general animosity toward Mary Ann stemmed from her status as a non-dues paying member of the union; that the union-requested "climate survey" was in response to concerns that Mary Ann received favorable treatment from her husband; and that the letter of warning resulted from Mary Ann's inappropriate conduct toward her supervisor.  Mary Ann has not rebutted Defendant's proffer of non-discriminatory reasons with evidence that would lead a reasonable juror to conclude Defendant's justification was pretextual.  Accordingly, Defendant is entitled to summary judgment on Mary Ann's claim of retaliation.

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.


**V.  ORDERS**

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 45) is GRANTED.

FURTHER, that the Clerk of the Court shall take the necessary steps to close this case.

SO ORDERED.


Dated:   March 30, 2007
         Buffalo, New York

                                                    /s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                  United States District Judge